UNITED STATES DISTRICT COURT

| | |
|---|---|
| JOHN J. HOGAN,<br>    Plaintiff<br><br>vs.<br><br>KEYSPAN HOME ENERGY SERVICES (NEW ENGLAND), INC. a/k/a SERVICEDGE PARTNERS, INC.,<br>    Defendant | CIVIL ACTION NO. 04-10313JLA |

## MEMORANDUM IN SUPPORT OF DEFNDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

### INTRODUCTION

The defendant, KeySpan Home Energy Services New England ("KeySpan"), submits this memorandum in support of its motion to dismiss the complaint of John Hogan, or in the alternative for summary judgment in its favor.

Mr. Hogan's complaint asserts two causes of action against KeySpan, his former employer: Breach of Contract (Count I) and Wrongful Termination of Employment (Count II). Mr. Hogan, a union employee, asserts that KeySpan terminated his employment in violation of a last chance agreement between KeySpan and his Union—an agreement that settled the Union's grievance of KeySpan's discharge of Mr. Hogan several months earlier. Both counts, thus, arise out of and depend upon the meaning of a labor agreement.

KeySpan moves to dismiss because § 301 of the Labor Management Relations Act preempts state law claims that depend upon the meaning of a labor agreement. In addition, plaintiff's complaint fails to adequately allege a claim under § 301. But even if such a claim were properly alleged, it would be barred by plaintiff's failure to exhaust the

collective bargaining agreement's mandatory grievance and arbitration procedure and by the applicable six-month statute of limitations.

## BACKGROUND

KeySpan sells, installs, and services a variety of home appliances including heating equipment, central air conditioning systems, gas fireplaces, and water heaters. Mr. Hogan worked as an Energy Services Technician, repairing and servicing appliances for KeySpan's customers. At all relevant times, he was a dues-paying member of United Steelworkers of America, AFL-CIO-CLC Local 9432 (the "Union"), which is the exclusive bargaining unit for all of its membership that are employed by KeySpan, including Mr. Hogan. [1] (Caddell Affidavit ¶¶2-3)

On April 25, 2001, KeySpan discharged Mr. Hogan for referring a KeySpan customer to a competitor. (Caddell Aff. ¶¶ 6-7). The Union disputed Mr. Hogan's discharge, filing a grievance on the very day Hogan was discharged. (Caddell Aff. ¶¶ 9-10). On June 18, 2001, KeySpan and the Union resolved that dispute by entering into a so-called Last Chance Agreement ("LCA"). The agreement converted Mr. Hogan's discharge into a 46-day suspension, and it set out terms, the violation of which in the future could lead to Mr. Hogan's discharge. (Caddell Aff., Ex. 2). The parties agreed that if Mr. Hogan were "found to be using his contacts with customers for personal gain or the gain of others" the appropriate discipline would be discharge, and that a discharge under those circumstances would not be subject to the usual grievance and arbitration procedure set out in the collective bargaining agreement. (Caddell Aff.¶¶ 11-12)

---

[1] Article II of the collective bargaining agreement provides as follows: "The Company recognizes the Union as the exclusive representative for the purposes of collective bargaining with respect to wages, hours and other items and conditions of employment for all full time employees...and all other employees." (Caddell Aff., Ex. 1)

2

Article IX contains a mandatory four-step grievance and arbitration procedure. [2] (Caddell Aff., Ex. 1) In practice, the Union may grieve and arbitrate two aspects of an employee discipline: (1) whether an alleged work-rule infraction has occurred and (2) whether the infraction, if proven, satisfies the underlying collective bargaining agreement's just-cause requirement for termination. The Hogan LCA, however, removes the second issue, the just cause requirement, from the grievance and arbitration procedure. (Caddell Aff., ¶¶ 13-14)

During December 2001, KeySpan discharged Mr. Hogan after he, once again, referred a KeySpan customer to one of KeySpan's competitors. Before sending the termination letter, KeySpan had conversations with representatives of the Union about possible resolution of this new Hogan violation. On December 4, 2001, however, KeySpan advised the Union that it would discharge Mr. Hogan. On December 6, 2001, KeySpan was contacted by Mr. Hogan's attorney. Eventually, on December 7, 2001, KeySpan sent by certified mail a termination letter to Mr. Hogan with a copy to the Union. (Caddell Aff., ¶ 16, Ex. 4). Unlike the first discharge, which the Union grieved on the day it was imposed, the Union has not grieved Mr. Hogan's second discharge, which is the subject of his lawsuit. Thus, the Union has disputed neither the factual basis for that discharge nor whether those facts amounted to a violation of the LCA.

## SUMMARY OF ARGUMENT

Both counts of the complaint allege state-law causes of action that arise out of and are dependent on an analysis of the terms of the LCA as well as the terms of the underlying collective bargaining agreement between the Company and the Union. As

---

[2] "Any grievance which may arise based on a dispute as to the meaning and application of this Agreement shall be finally settled in the following manner...." (Caddell Aff., Ex 1, Article IX, p. 12)

3

such, Plaintiff's complaint is preempted by federal labor law and should be dismissed. Allis-Chalmers Corp. v. Lueck, 471 U.S. 202 (1985); Lingle v. Norge Div. of Magic Chefs, Inc., 486 U.S. 399 (1988); Flibotte v. Pennsylvania Truck Lines, Inc., 131 F.3d 21 (1st Cir. 1997).

Companies and Unions frequently use Last Chance Agreements, such as the one in this case, to resolve employee discipline matters. For preemption purposes, federal courts treat LCAs as part and parcel of the collective bargaining agreement that they supplement. Indeed, federal courts have accurately described LCAs as riders and supplements to their respective collective bargaining agreements. Davis v. Bell Atlantic-West Virginia, Inc., 110 F.3d 245 (4th Cir. 1997); International Union of Operating Engineers, Local 3512 v. Cooper Natural Resources, Inc., 163 F.3d 916 (5th Cir. 1999).

Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, preempts state-law claims that depend on the meaning of a collective bargaining agreement. Flibotte v. Pennsylvania Truck Lines, Inc., 131 F.3d 21 (1st Cir. 1997). Accordingly, state-law claims such as Mr. Hogan's—that an employee was wrongfully terminated in violation of an LCA—are subject to dismissal. For that reason, both counts of the plaintiff's complaint should be dismissed. E.g., Freeman v. Duke Power Company, 2004 U.S. App. Lexis 20452 (4th Cir. 2004)(holding that 301 preempts state-law claims where an employee violated an LCA by moonlighting as an electrical contractor).

Additionally, to the extent plaintiff's complaint is understood to adequately allege a § 301 claim (which it does not), it should be dismissed because plaintiff has failed to exhaust the collective bargaining agreement's mandatory grievance and arbitration procedure and because it is barred by the applicable six-month statute of limitations. An employee is required to exhaust grievance and arbitration procedures before bringing a § 301 claim. Vaca v. Sipes, 386 U.S. 171, 184 (1967). In order to excuse his failure to

exhaust the mandatory grievance and arbitration procedure, plaintiff would have to allege that the Union wrongfully failed to pursue a grievance of his discharge. Vaca v. Sipes, 386 U.S. 171, 184 (1967). In that case, Mr. Hogan's complaint is not only that KeySpan wrongfully discharged him, but it is also that the Union has failed to adequately represent him. Such claims, known as "hybrid" section 301 claims, have a six-month statute of limitation, which in this case had run well before plaintiff's complaint was filed. DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 103 S. Ct. 2281, 76 L. Ed. 2d 476 (1983); DeMars v. General Dynamics Corp., 779 F.2d 95 (1st Cir. 1985). Thus, to the extent plaintiff has a § 301 claim, it is subject to dismissal.

## DISCUSSION

### A. Plaintiff's Claims Are Preempted By Federal Labor Law And Should Be Dismissed.

Section 301 preempts state-law claims that depend upon the meaning of a collective bargaining agreement. A state-law claim depends on the meaning of a collective bargaining agreement if it either alleges a breach of rights created by the collective bargaining agreement or if the resolution of the claim hinges upon an interpretation of the collective bargaining agreement. Flibotte v. Pennsylvania Truck Lines, Inc., 131 F.3d 21 (1st Cir. 1997). In our case, plaintiff's claims are clearly dependent on the terms of the LCA and the underlying collective bargaining agreement, and are thus preempted.

#### 1. State-Law Claims are Preempted If They Depend On The Meaning of a Collective Bargaining Agreement.

When a state-law claim is either founded directly on rights created by a collective-bargaining agreement or is substantially dependent upon an analysis of the terms of such an agreement, that claim is completely preempted by § 301 of the Labor Management Relations Act and is subject to dismissal. 29 U.S.C. § 185; Allis-Chalmers

5

Corp. v. Lueck, 471 U.S. 202 (1985)(dismissing as preempted a state-law tort claim for bad-faith handling of a disability claim, because it required an interpretation of both the labor agreement creating the benefit plan and the agreement's grievance procedure for handling claims under the plan). In our case, plaintiff's claims meet both criteria for preemption and should be dismissed.

Section 301 confers federal court jurisdiction over "suits for violation of contracts between an employer and a labor organization representing employees." The Congressional reasoning behind this jurisdictional grant has led the Supreme Court, in a series of cases, to establish § 301 preemption of state-law claims. Initially, the Court recognized that the statute empowers federal courts to fashion a body of federal common law reasonably necessary for the interpretation and enforcement of collective bargaining agreements. Textile Workers v. Lincoln Mills, 353 U.S. 448 (1957). To ensure the application of this comprehensive, uniform body of federal labor-contract law, the Court next held that state law is preempted when the resolution of a state-law claim depends upon the meaning of a collective bargaining agreement. Teamsters v. Lucas Flour Co., 369 U.S. 95 (1962)(declaring that federal law must be applied to decide whether a collective bargaining agreement's mandatory arbitration provision prohibited a strike to settle a wrongful termination grievance); Lingle v. Norge Div. Of Magic Chef, Inc., 486 U.S. 399, 405-406 (1988) (stating that under Lucas Flour if a state law claim depends on the meaning of a collective bargaining agreement it is preempted by § 301).

In order to determine whether § 301 preempts a state law claim, a court should examine the elements of each claim and decide whether resolution of that claim depends on the meaning of a collective bargaining agreement. [3] A state-law claim can depend on

---

[3] Indeed, a plaintiff cannot skirt section 301 preemption by the simple expedient of recharacterizing as a tort a claim that is based on duties arising out of a labor agreement. Flibotte, 131 F.3d at 27 (applying § 301 preemption to state-law Negligence and Intentional Infliction of Emotional Distress claims).

6

the meaning of a collective bargaining agreement in two ways: (1) the claim alleges conduct that breaches a duty arising out of the collective bargaining agreement or (2) the resolution of the state-law claim hinges on an interpretation of the collective bargaining agreement. Flibotte v. Pennsylvania Truck Lines, Inc., 131 F.3d 21, 26 (1st Cir. 1997) citing United Steelworkers v. Rawson, 495 U.S. 362, 369 (1990) and Allis-Chalmers, supra. at 220. Both tests are met in this case.

### 2. Last Chance Agreements Are Part and Parcel of the Collective Bargaining Agreement for Purposes of Section 301 Preemption.

Federal courts treat LCAs as labor agreements that are subject to § 301 preemption. Generally, LCAs settle employee discharges that are disputed under the applicable collective bargaining agreement. LCAs also interpret, and in some cases modify, the "just cause" provision of the collective bargaining agreement with respect to the involved employee by stipulating that in his case certain described behavior will provide just cause for his discharge. Resolution of a claimed violation of an LCA is inextricably intertwined with the underlying collective bargaining agreement and thus subject to § 301 preemption.

Just cause provisions, such as the one contained in the collective bargaining agreement between KeySpan and the Union, permit the employer to discharge an employee where his behavior warrants such a severe response. [4] But such provisions also can act as a limitation on the Company's ability to discharge where a discharge would be too severe a penalty for the offense under the circumstances of the case. Thus, for instance, the Union may admit that an employee committed the behavior alleged by the Company, but still grieve and arbitrate the discharge on the grounds that the work-

---

[4] The collective bargaining agreement provides that KeySpan may "discharge for just cause." (Caddell Aff., Ex. 1, Article VII§ 1, pp8-9).

place infraction was not so serious as to provide just cause for his termination. See generally Elkouri & Elkouri, How Arbitration Works, Ch. 15.

Under an LCA, the employee is conditionally reinstated to his job subject to the threat of termination should it be determined that he has engaged in certain defined behavior in the future. Normally, LCAs recite that a discharge for violating the terms of the LCA will not be subject to the grievance and arbitration procedure. The parties, in effect, further define the collective bargaining agreement's "just cause" provision as it will relate to that particular employee. Davis v. Bell Atlantic-West Virginia, 110 F3d 245, 248 (3d Cir. 1997).

Because an LCA resolves a labor dispute that arises under a collective bargaining agreement and supplements that agreement by defining its just cause provision, courts have traditionally analyzed LCAs as riders or supplements to the collective bargaining agreement. Courts recognize that LCAs draw their vitality from the underlying collective bargaining agreement. They represent a resolution of a grievance under that agreement, and they define the "just cause" necessary for subsequent termination. See, e.g., Davis v. Bell Atlantic-West Virginia, Inc., 110 F.3d 245 (4th Cir. 1997).

All of these aspects of the traditional LCA are present in the Hogan LCA. It resolved a dispute under the collective bargaining agreement—the grievance of his initial discharge. It also declares that for the remainder of Hogan's employment the Company may discharge him for "using his contacts with customers for personal gain or the gain of others or for engaging in any outside work activity that directly or indirectly competes with the services provided by the Company." Thus, the Hogan LCA defines the just cause provision in the collective bargaining agreement by identifying certain behavior that will, by agreement, constitute the just cause necessary for a future discharge.

Because LCAs are part and parcel of the underlying collective bargaining agreement, federal courts have repeatedly held that state-law claims (such as Mr. Hogan's) that allege a wrongful termination that breaches an LCA are barred by § 301. LCAs are supplements to the CBA, derive from the CBA, and are labor contracts within the meaning of § 301. Claims such as Mr. Hogan's are thus covered by § 301 preemption. [5]

"The preemption inquiry thus focuses on whether the state-law claims are either 'founded directly on rights created by collective-bargaining agreements' or are 'substantially dependent' on analysis of such agreements; if they are, the claims are preempted." Nuzzo v. Northwest Airlines, Inc., 887 F. Supp. 28, 29 (D. Mass. 1995) quoting Caterpillar, Inc. v. Williams, 482 U.S. 386, 394 (1987). The LCA in our case was arrived at in the course of resolving a Union grievance. It modifies and defines the CBA's just cause provision as it will apply to Mr. Hogan's continued employment. It is, itself, a labor agreement for purposes of § 301 preemption. As described below, Mr. Hogan's claims are based upon rights created by the LCA and the collective bargaining agreement and turn entirely on the interpretation and application of those agreements. Section 301 preemption applies, and they should be dismissed.

---

[5] Davis v. Bell Atlantic-West Virginia, Inc., 110 F.3d 245 (4th Cir. 1997)(claims for breach of an LCA are preempted by § 301 because the LCA's "entire vitality and legitimacy thus draws on the underlying collective bargaining agreement"); Freeman v. Duke Power Company, 2004 U.S. App. LEXIS 20452 (4th Cir. 2004)(holding that § 301 preempts state-law claims where an employee violated an LCA by "moonlighting" as an electrical contractor); Thomas v. LTV Corp., 39 F.3d 611, 618-19; (5th Cir. 1994)(holding that § 301 preempts state-law wrongful discharge claims based on violation of an attendance probation LCA because such document "may be properly described as a collective-bargaining instrument and should be analyzed for preemption purposes just as if it was a CBA"); Jones v. General Motors Corp., 939 F.2d 380, 382-83 (6th Cir. 1991)(concluding that § 301 preempts state-law claims for breach of a settlement agreement because "it will require a court to address relationships that have been created through the collective bargaining process and to mediate a dispute founded upon rights created by the CBA."); Stallcop v. Kaiser Found. Hosps., 820 F.2d 1044, 1048 (9th Cir. 1987)(ruling that § 301 preempts state tort claims for breach of a union-negotiated agreement to reinstate an employee even where employee asserted that she also had an oral side agreement in conjunction with the written reinstatement agreement). Also see Nuzzo v. Northwest Airlines, Inc., 887 F. Supp. 28 (D. Mass. 1995)(applying section 301 preemption principles to state-law claims arising out of violation of an LCA).

9

### 3. Plaintiff's Claims of Breach of Contract and Wrongful Termination Depend Upon the Meaning of the LCA and the Collective Bargaining Agreement and Are Therefore Preempted.

The principles set forth above require that both Count I ("Breach of Contract") and Count II ("Wrongful Termination of Employment") be dismissed as preempted by § 301. First, both counts explicitly allege that KeySpan violated duties that are rooted in both the LCA and the collective bargaining agreement. In Count I, plaintiff alleges that "the defendant breached that agreement [the LCA] with the Plaintiff by terminating his employment without just cause." (Complaint, ¶ 5) While in Count II, plaintiff merely re-characterizes his allegation by asserting that KeySpan terminated him by falsely claiming that plaintiff had violated the Last Chance Agreement. (Complaint, ¶ 7).

Secondly, all of these claims turn on the provisions of the LCA and the collective bargaining agreement. In resolving these claims, the court would be required to read and interpret the terms of these agreements. See, e.g., Caterpillar, Inc. v. Williams, 482 U.S. 386, 398 (1986) ("It is true that when a defense to a state claim is based on the terms of a collective bargaining agreement, the state court will have to interpret that agreement to decide whether the state claim survives."). The court would have to determine whether or not Mr. Hogan referred work to a KeySpan competitor, and if so, whether that behavior violated the provisions of the LCA. Additionally, even if Mr. Hogan's behavior did not violate the LCA, the court could nevertheless be called upon to determine whether it did amount to just cause for discharge under the collective bargaining agreement. Such issues of labor contract interpretation, along with subsidiary issues such as determining the appropriate standards of proof and sufficiency of proof, are entrusted, in the first instance, to an arbitration panel under the CBA's mandatory arbitration procedures. See Hayes v. New England Millwork Distributors, Inc., 602 F. 2d 15, 19 (1st Cir. 1979).

Plaintiff's claims are clearly based on rights arising out of both the LCA and the collective bargaining agreement. Moreover, to resolve his claims the court would necessarily be called upon to interpret both those agreements. Thus, Counts I and II of plaintiff's complaint are preempted by § 301, and should be dismissed.

### B.    Plaintiff Failed to Exhaust His Grievance and Arbitration Remedies.

Where a collective bargaining agreement's mandatory grievance and arbitration procedures are not exhausted, an employee's claim that he was wrongfully discharged must be dismissed. Although there are circumstances that excuse the exhaustion requirement, none are present in this case.

#### 1. The Collective Bargaining Agreement's Mandatory Grievance and Arbitration Procedure Applies to Plaintiff's Allegations

To determine whether a mandatory grievance and arbitration procedure applies, a court must determine whether the claim is governed by the collective bargaining agreement. Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241 (1962). There is a strong presumption in favor of arbitration, which is "particularly applicable" when the contract contains broad arbitration language. AT&T Technologies, Inc. v. Communication Workers, 475 U.S. 643, 650 (1986); United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960) ("Doubts should be resolved in favor of coverage.")

In our case, the CBA's grievance and arbitration provision requires that "[a]ny grievance which may be based on a dispute as to the meaning and application of this agreement shall be finally settled" under the dispute procedure laid out in Article IX of that agreement. This sweeping provision contains no language that limits its coverage to

11

certain types of claims. Given the broad contract language, the lack of language limiting the provision to certain types of disputes, and the presumption of arbitrability, plaintiff was required to exhaust the grievance and arbitration procedures that were available to him under the collective bargaining agreement. See, e.g., United Steelworkers of America v. Lukens Steel Company, 969 F. 2d 1468 (3d Cir. 1992)(finding that the threshold determination of violation of an LCA is arbitrable where the collective bargaining agreement contained a broad arbitration clause).

Although the LCA in this case states that a discharge for violating the restrictions of the LCA will not be subject to the grievance and arbitration procedure, it does not exclude the basis for the discharge—whether the LCA restrictions were violated—from the grievance and arbitration procedure. Federal courts have consistently found that discharges pursuant to LCAs with this type of language are indeed arbitrable. Under an LCA, a company and union agree to a streamlined resolution of any future violations. Should the forbidden behavior reoccur, discharge is the appropriate discipline; the union cannot grieve or arbitrate the discharge based on the collective bargaining agreement's just cause provision. Of course, whether or not the forbidden behavior ever occurred, thus triggering the discharge provision of the LCA, is still subject to grievance and arbitration, as are ambiguities in the LCA's terms. United Steelworkers of America v. Lukens Steel Company, 969 F.2d 1468, 1476-78 (3d Cir. 1992); Davis v. Bell Atlantic-West Virginia, Inc., 110 F.3d 245 (4th Cir. 1997)(LCA defining just cause was arbitrable); Division 1205, Amalgamated Transit Union, AFL-CIO v. Greyhound Lines, Inc., 323 F. Supp. 219 (D. Mass. 1971)(dispute involving LCA containing language waiving arbitration found subject to mandatory arbitration provision); Hague v. United Paperworkers International Union, Hudson Local No. 18, 949 F. Supp. 979 (N.D.N.Y. 1996).

12

### 2. Plaintiff Has Not Alleged Any Circumstances that Would Excuse the Exhaustion Requirement.

Before bringing an action against his employer for violation of a collective bargaining agreement, the employee ordinarily must have exhausted the agreement's grievance procedure. Republic Steel Corp. v. Maddox, 379 U.S. 650, 653 (1965). Vaca v. Sipes, 386 U.S. 171, 184 (1967). There are two major exceptions to this general rule: (1) where the employer repudiates those contractual procedures or (2) where the union has the sole power under the agreement to invoke the higher stages of the grievance procedure and it wrongfully refuses to process the grievance. Vaca v. Sipes, 386 U.S. at 185.

Absent an allegation in the complaint that one of these exceptions applies, courts are prohibited from intruding into those functions, which the collective bargaining agreement has entrusted to an arbitrator. Hayes v. New England Millwork Distributors, Inc., 602 F. 2d 15 (1st Cir. 1979)(affirming dismissal on the pleadings of an employee's § 301 claim against his employer where the employee's union had not pursued his grievance to arbitration). Mr. Hogan's complaint alleges neither of the circumstances that would excuse his failure to exhaust the collective bargaining agreement's mandatory grievance and arbitration procedures. Any claim he may possess under section 301 would thus be subject to dismissal.

### C.   Plaintiff's Complaint Fails To Adequately Allege A Section 301 Claim

Often, it is up to the Union to enforce the LCA and the CBA by, among other things, submitting employee grievances to arbitration if it deems such action is appropriate. Sipes v. Vaca, supra; Mouradian v. The John Hancock Companies, 751 F. Supp. 262 (1988). In those circumstances, the collective bargaining agreement does not give individual employee the right to compel arbitration themselves. Rather, an

individual employee's remedy is a suit against his union for breach of the duty of fair representation for failure to submit his grievance to arbitration. <u>Vaca v. Sipes</u>, 386 U.S. at 190-93. Such suits are referred to as "hybrid' section 301 claims. <u>See</u> <u>DelCostello</u>, 462 U.S. at 165.

As a matter of law, however, Hogan's complaint is insufficient to state a hybrid claim under section 301. In such a claim, the employee must allege both that the employer wrongfully discharged him and also that the Union failed in its duty of adequate representation. Even if an employee can prove that he was wrongfully discharged, that alone is insufficient to state such a section 301 claim. Moreover, the mere fact that a union declines to pursue grievance and arbitration of what is later shown to be a wrongful termination does not amount to a violation of the union's duty of fair representation. Rather, in order to state a claim under § 301, the employee must also allege arbitrary or bad faith conduct on the part of the union in failing to pursue grievance and arbitration. <u>Vaca v. Sipes</u>, <u>supra</u>

In our case, however, Mr. Hogan's complaint simply alleges that KeySpan wrongfully discharged him. He does not assert that the Union failed in its duty of adequate representation. Thus his complaint fails to adequately state a claim under section 301.

### D.  Plaintiff's Claims Are Barred By the Applicable Six-Month Statute of Limitations

Even if the Court were inclined to treat plaintiff's claims as arising under § 301 (which the plaintiff has not adequately alleged) they are barred by the applicable statute of limitations. Section 301 claims have a six-month statute of limitations. 29 U.S.C.§ 160 (b); <u>DelCostello v. International Bhd. of Teamsters</u>, 462 U.S. 151, 155 (1983); <u>Arriaga-Zayas v. Intern'l Ladies Garment Workers' Union, Puerto Rico Council,</u>

835 F.2d 11 (1st Cir. 1987). <u>Mouradian v. The John Hancock Companies</u>, 751 F. Supp. 262 (D. Mass. 1988). In our case, before his discharge plaintiff was represented by the Union and had the benefit of legal counsel. (Caddell Aff. ¶¶ 16-19) In contrast to its immediately grieving Hogan's prior discharge (in April 2001), the Union did not pursue a grievance of the December termination. (Caddell Aff. ¶9 and ¶20). Plaintiff was sent by certified mail a termination letter on December 7, 2001. (Caddell Aff. ¶ 18; Complaint, para 5). Nevertheless, plaintiff did not file his Complaint until October 22, 2003, almost two years later. [6] Accordingly, plaintiff's claim under § 301 is time-barred.

### E.    Conclusion

In light of the foregoing, defendant KeySpan respectfully requests that plaintiff's Complaint be dismissed.

          Defendant,
          KeySpan Home Energy Services
          By its attorney

          */s/ Thomas R. Teehan*
          Thomas R. Teehan
          KeySpan Home Energy Services
          52 Second Avenue
          Waltham, MA  02451
          BBO No. 494000

Dated: December 9, 2004

### CERTIFICATE OF SERVICE

I, Thomas R. Teehan, hereby certify that a true copy of the above document, Memorandum in Support of Defendant's Motion to Dismiss or in the Alternative Summary Judgment, was served upon Robert J. Zanello, Esq., 400 Granite Avenue, Milton, MA 02186 by hand on December 9, 2004.

          */s/ Thomas R. Teehan*
          Thomas R. Teehan

---

[6] On October 22, 2003, Plaintiff's Complaint was filed in Norfolk Superior Court, from which court it was later removed.