UNITED STATES DISTRICT COURT

|  |  |
|---|---|
| JOHN J. HOGAN,<br>      Plaintiff<br><br>vs.<br><br>KEYSPAN HOME ENERGY SERVICES (NEW ENGLAND), INC. a/k/a SERVICEDGE PARTNERS, INC.<br>      Defendant | CIVIL ACTION NO. 04-10313JLA |

## STATEMENT OF MATERIAL FACTS

In compliance with Local Rule 56.1, Defendant KeySpan Home Energy Services, Inc. ("KeySpan") submits the following statement of material facts to which KeySpan contends there is no genuine issue to be tried.

1.      Plaintiff John J. Hogan worked as a customer service technician for KeySpan from March 16, 1998 until December 5, 2001, when he was discharged. At all relevant times, he was a member of United Steelworkers of America, AFL-CIO-CLC Local 9432 (the "Union"). KeySpan regularly deducted Union dues from Mr. Hogan's pay. At all relevant times, Mr. Hogan was employed in a Union bargained-for position. (Caddell Affadavit, ¶ 2).

2.      KeySpan sells, installs, and services a variety of home appliances including heating equipment, central air conditioning systems, indoor air quality systems, and gas fireplaces. (Caddell Affadavit, ¶ 3).

3. The Union is the sole and exclusive bargaining representative for all the Local's membership that are employed by KeySpan. (Cadell Affadavit, ¶ 4; Collective Bargaining Agreement, Article II)

4. KeySpan and the Union entered into a collective bargaining agreement governing the working conditions of the Union membership for the period March 1, 2001 through February 29, 2004. A true and accurate copy of that collective bargaining agreement is attached as Exhibit 1 to the Affadavit of Kevin Caddell. (Caddell Affadavit, ¶ 5).

5. On or about March 27, 2001, KeySpan received information that Mr. Hogan had referred a KeySpan customer to a KeySpan competitor (Heating Pro) to replace a furnace. KeySpan conducted an investigation and determined that this information was correct. (Caddell Affadavit, ¶ 6).

6. On or about April 25, 2001, KeySpan terminated Mr. Hogan's employment with KeySpan. (Caddell Affadavit, ¶ 7).

7. Article IX of the collective bargaining agreement between KeySpan and the Union provides for a mandatory grievance and arbitration procedure to resolve any disputes arising under the agreement, including disputes relative to employee discipline and termination. (Caddell Affadavit, ¶ 8 and Ex. 1, Article IX).

8. On the same date as Mr. Hogan's termination (April 25, 2001), the Union filed a grievance. A copy of the Grievance Report is attached as Exhibit 3 to the Affadavit of Kevin Caddell. (Caddell Affadavit, ¶ 9 and Ex. 2).

9. On May 4, 2001, a first-step grievance was held. (Caddell Affadavit, ¶ 10).

10. On June 18, 2001, the Union's grievance of Mr. Hogan's termination was resolved by a "Last Chance Agreement," which is attached as Exhibit 3. The Last Chance

Agreement was signed by representatives of the Union and KeySpan, and by Mr. Hogan. (Caddell Affadavit, ¶ 11).

11. Under the Last Chance Agreement, the Union and KeySpan reached an agreement to reduce Mr. Hogan's discipline from a discharge to a 46-day suspension "for directly referring installation work to a competitor of the Company." (Cadell Affadavit ¶ 12 and Ex. 4)

12. The collective bargaining agreement would otherwise permit the Union to grieve and arbitrate whether a given infraction, if committed by an employee, provided just cause to terminate an employee. (Cadell Affadavit ¶ 13 and Ex. 1, Article VII).

13. But the Last Chance Agreement provides, among other things, that in the future if Mr. Hogan were "found to be using his contacts with customers for personal gain or the gain of others" he would be subject to discharge, and that "such discharge will not be subject to the grievance and arbitration procedure as outlined in Article IX of the parties collective bargaining agreement." Thus, if Mr. Hogan were to be found to have engaged in the forbidden behavior the Union could not challenge the appropriateness of the discipline. (Cadell Affadavit ¶ 14 and Ex. 4)

14. On November 15, 2001, KeySpan received information from a KeySpan customer that Mr. Hogan had referred her to another contractor, Heating Pro, to have her furnace replaced. (Caddell Affadavit ¶ 15).

15. As a result of this information KeySpan conducted its own investigation of this matter. On November 28, 2001 KeySpan held an investigatory meeting with Mr. Hogan and the Union. Over the following few days, KeySpan had several conversations with representatives of the Union regarding the possible resolution of the Hogan matter. Eventually, however, on

December 4, 2001, KeySpan advised the Union that the Company had decided to terminate Mr. Hogan's employment. (Caddell Aff. ¶¶ 16-17).

16. On December 6, 2001, KeySpan received a phone call from Mr. Hogan's counsel, Mr. Zanello, indicating that he would be representing Mr. Hogan in this matter. On December 7, 2001, KeySpan sent by certified mail a termination letter (dated December 5) to Mr. Hogan, with a copy to the Union. (Caddell Aff. ¶¶18-19).

17. The Union has not filed a grievance or sought to arbitrate the circumstances underlying Mr. Hogan's discharge. (Caddell Affadavit, ¶ 20).

DEFENDANT KEYSPAN HOME ENERGY SERVICES (NEW ENGLAND), INC. d/b/a SERVICEDGE PARTNERS, INC.

By its Attorney,

DATED: December 9, 2004

Thomas R. Teehan (BBO #494000)
KeySpan Energy Delivery
52 Second Avenue
Waltham, MA 02451
781-466-5137

### CERTIFICATE OF SERVICE

I, Thomas R. Teehan, hereby certify that a true copy of the above document, Statement of Material Facts, was served upon Robert J. Zanello, Esq., 400 Granite Avenue, Milton, MA 02186 by hand on December 9, 2004.

Thomas R. Teehan